**NOTICE**
Decision filed 12/11/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240169-U

NO. 5-24-0169

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

**NOTICE**
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 23-CF-1502 |
| | ) | |
| OTIS H. HARRIS, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err when it denied the defendant's *pro se* motion to withdraw guilty plea, and any argument to the contrary would lack substantial merit, and therefore the defendant's appointed appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Otis H. Harris, was *pro se* when he pleaded guilty to aggravated battery with a firearm and was sentenced to imprisonment for 12 years, all in accordance with a plea agreement between himself and the State. Less than two weeks after pleading guilty, the defendant filed a *pro se* motion to withdraw his guilty plea. At a hearing, the defendant argued *pro se* in favor of his motion to withdraw plea. However, the circuit court denied the motion. Now on appeal from that denial, the defendant's appointed counsel, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit, and on that basis it has filed a motion to

1

withdraw as counsel, along with a supporting brief. See *Anders v. California*, 386 U.S. 738 (1967); *People v. Jones*, 38 Ill. 2d 384 (1967). OSAD gave the defendant proper notice of its *Anders* motion. This court gave him the opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw or why this appeal has substantial merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Anders* motion and brief, as well as the entire record on appeal. For the reasons that follow, this court has concluded that the instant appeal does indeed lack merit. Accordingly, this court must grant OSAD's *Anders* motion and must affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      In July 2023, the defendant was charged with being an armed habitual criminal (count I), aggravated battery with a firearm (count II), unlawful possession of weapons by a felon (count III), and unlawful possession of a stolen firearm (count IV). The first two crimes were Class X felonies, and the last two were Class 2 felonies. The public defender was appointed to represent the defendant.

¶ 5      On July 27, 2023, the defendant filed a *pro se* motion to proceed *pro se*. The circuit court held a hearing on this motion on August 14, 2023. The public defender stated that she wanted to withdraw as the defendant's counsel because the defendant wanted to proceed *pro se*. In response to the court's query, the defendant indicated his understanding that if he wanted to keep the public defender, the court would allow him to do so. In response to additional questions from the court, the defendant said that he was 31 years old and that he had gotten as far as the tenth grade in school. He indicated that he could read, write, and understand the English language, that he was not under the influence of drugs or alcohol, and that he did not suffer from any mental or physical condition that prevented him from understanding the courtroom proceedings. The court informed

2

the defendant of the nature of all four charges against him and of each charge's minimum and maximum prison sentences, including mandatory imprisonment for the two Class X felonies, plus the required terms of mandatory supervised release (MSR). The defendant indicated his understanding of the charges and the possible penalties. He also indicated that he had represented himself at a jury trial in the past; in 2016, he had been found guilty of home invasion, two armed robberies, and another charge, he stated. He indicated his understanding that if he served as his own attorney, he would not have anyone to help him with strategy, with presenting evidence, or with objections. He understood that the trial court could not assist him, and that it would hold him to the same standard that lawyers were required to meet. He understood that after the trial was completed, he could not complain about his own representation. When asked by the court, the defendant admitted that he had not been to law school. The court opined that it was "a terrible idea" to represent himself on such serious charges when the State was represented by experienced prosecutors. In response to the court's further queries, the defendant indicated that nobody had forced him or threatened him into his decision, and that he did so voluntarily. He also understood that if he wished the appointment of counsel, the court would appoint counsel.

¶ 6       After informing and questioning the defendant about all these matters, the court found that the defendant understood the nature of the charges against him, understood the possible penalties, and understood that he had a right to counsel. The court also found that the defendant had "the mental capacity to waive counsel," and that his waiver of counsel was "knowing and voluntary." The court allowed the public defender to withdraw and allowed the defendant to represent himself in this case. The court promptly entered a written order granting the defendant's motion to proceed *pro se*.

¶ 7    On September 6, 2023, the defendant filed a *pro se* "Motion for 402 conference." In that motion, the defendant sought "a sit down" with the assistant State's attorney who was handling his case "to try an [*sic*] come to a conclusion in this matter."

¶ 8    On September 21, 2023, the parties were before the court, and the court inquired about the defendant's motion for a Illinois Supreme Court Rule 402 conference. See Ill. S. Ct. R. 402(d)(1) (eff. July 1, 2012). The defendant indicated that the State had given him a plea offer in the case. Later, the defendant announced that he wanted a bench trial, not a jury trial, and he signed a waiver of his right to a trial by jury. The court questioned him about this waiver. The defendant, in response to the court's questions, indicated his understanding that he had a federal and state constitutional right to a trial by jury, and that by signing the waiver, he was surrendering that right and, as a result, a judge would hear the evidence at his trial and would decide whether he was guilty. The defendant also indicated that nobody had forced or threatened him into waiving his right to a jury trial and that his waiver was free and voluntary. The court found that the defendant understood his right to a jury trial and was "making a knowing and voluntary and intelligent waiver of [his] right to a jury trial and instead proceeding to what we call a nonjury or a bench trial." The court promptly entered a written order granting the defendant's *pro se* motion to waive jury trial.

¶ 9    Later in September 2023, the defendant filed a motion asking the court to appoint counsel for him. In that motion, he expressed a belief that he was incapable of representing himself. The court held a hearing on the motion. The court asked the defendant whether he wanted the court to appoint the public defender, and he answered affirmatively. Again, the court appointed the public defender for the defendant.

¶ 10    On October 25, 2023, the defendant filed his second *pro se* motion to proceed *pro se*. At a hearing on November 6, 2023, the defendant stated that he wanted to proceed *pro se*. When the

4

court asked him why, the defendant answered, "Because I'm tired of my court dates being continued." The court asked the defendant whether he understood that he had a right to have an attorney represent him, and he answered in the affirmative. The court noted that during the hearing on the defendant's first motion to proceed *pro se* (which was held on August 14, 2023, see *supra*), it had questioned him about his age, level of education, mental capacity, and prior involvement in legal proceedings, and it had admonished him about self-representation and the potential pitfalls involved in self-representation, and it had admonished him about the potential penalties for the various charges that he faced. The court stated that it would not repeat that earlier questioning. However, the court did ask the defendant a few questions, and the defendant answered in ways that indicated that his decision to represent himself was made freely and voluntarily, and that nobody had forced or threatened him into making that decision, and that he understood that he could have an attorney if he wanted one. When the court asked him one last time whether he wanted to represent himself, the defendant answered in the affirmative. The court found that the defendant had made a knowing and voluntary waiver of his right to counsel, and it allowed him to represent himself. In response to the court's query, the defendant indicated that he still wanted to waive his right to a jury trial and to have a trial before a judge.

¶ 11    During the times that the defendant was *pro se*, he filed numerous motions. These included motions to disclose, motions to dismiss the charges, motions to suppress evidence, a motion to hire a forensics expert, and a motion to sever charges. Hearings were held on all of these motions, and the defendant argued in favor of them.

¶ 12    On November 29, 2023, the parties appeared before the court. The assistant State's attorney announced that the defendant would plead guilty to count II, aggravated battery with a firearm, and he would be sentenced to 12 years in prison, while the three other charges against him would

be dismissed. The defendant agreed that those were the terms reached in the parties' negotiations. The court agreed to bind itself to those negotiations, and it asked the defendant whether he wished to plead guilty, and he answered in the affirmative.

¶ 13 In response to further questions from the court, the defendant stated that he was 32 years old and had been schooled to the ninth grade, and he indicated that he was not under the influence of drugs or alcohol and did not suffer from any mental or physical condition that would prevent him from understanding the courtroom happenings. The court admonished the defendant that aggravated battery with a firearm was a Class X felony, and it read the specific allegations contained in count II of the indictment, and the defendant indicated his understanding of the charge. When the court asked him how he wished to plead to that charge, the defendant answered, "Guilty." The court admonished the defendant about the presumption of his innocence and the State's burden of proving him guilty beyond a reasonable doubt, and the defendant indicated that he understood. The court admonished him of his right to be represented by an attorney, including the right to an appointed attorney if he could not afford to hire one, and of his right to represent himself, and the defendant indicated that he understood. The court admonished him of his right to a trial, whether by jury or by the court, and of his right to confront and cross-examine the witnesses against him, his right to subpoena and call witnesses on his own behalf, his right to testify at his trial, if he so chose, and further admonished him that by entering a negotiated plea, he would be waiving his right to a trial. Again, the defendant indicated his understanding. As for sentencing, the court stated, this particular Class X felony was punishable by 6 to 30 years in prison, to be followed by 3 years of MSR, and he said he understood.

¶ 14 The assistant State's attorney provided a factual basis for the plea, describing the circumstances of the defendant's shooting his estranged wife with a gun. The court asked the

6

defendant whether anyone had forced or threatened him to plead guilty, or whether anyone had made any promises to him, apart from those put on the record, to persuade him to plead guilty, and the defendant answered in the negative to each question. He answered in the affirmative the question of whether he was pleading guilty freely and voluntarily. When the court asked whether he still wished to plead guilty, he answered affirmatively.

¶ 15 The court found that the defendant understood the charge and the range of penalties that he faced and understood his rights and was knowingly and voluntarily waiving them. The court determined that there was a sufficient factual basis for the guilty plea. The court accepted the defendant's plea as to count II. The parties waived a presentence investigation report, and the court reviewed the defendant's criminal history contained in the court file. By agreement of the parties, the court sentenced the defendant on count II to 12 years in prison, with credit for time served. Finally, the court advised the defendant of his appeal rights, including the need to file a motion to withdraw plea.

¶ 16 In a written order, the court dismissed counts I, III, and IV, and stated that all fees, etc., were waived pursuant to the plea. The written judgment showed that the defendant was sentenced to imprisonment for 12 years for aggravated battery with a firearm, to be followed by 3 years of MSR.

¶ 17 On December 11, 2023, the circuit clerk file-stamped the motion that is the subject of the instant appeal—the defendant's *pro se* motion to withdraw guilty plea. The defendant had placed the motion in the prison mail system at Graham Correctional Center on December 7, 2023. No grounds for withdrawal were included in the motion.

¶ 18 On January 31, 2024, the court, with both parties present, referred to the defendant's *pro se* motion to withdraw plea. The court asked the defendant whether he wanted to have an attorney

7

appointed to represent him on his motion to withdraw guilty plea. The defendant answered in the negative. After some discussion about scheduling a hearing on the motion to withdraw plea, and how the scheduling would be affected by the appointment of counsel, the defendant told the court, "I would like to have my motion today, so no, I would not like an attorney."

¶ 19    That same date, a hearing was held on the defendant's motion to withdraw guilty plea. The defendant argued that the court, contrary to the provisions of Illinois Supreme Court Rule 401 (eff. July 1, 1984), had permitted him to waive counsel and to proceed *pro se* without first advising him of the nature of all four of the charges that he faced, and without informing him of the minimum and maximum sentences as to all four of those charges, including the possibility of consecutive sentences, and without reminding him of his right to counsel. The defendant also stated that the admonishment required by Rule 401 was not provided at the time of his second waiver of counsel (*i.e.*, on November 6, 2023) but was provided "months prior" at his first waiver of counsel (*i.e.*, on August 14, 2023), and therefore it could not guarantee a knowing and intelligent waiver of the right to counsel. The assistant State's attorney briefly argued against the motion to withdraw guilty plea.

¶ 20    The court stated that on August 14, 2023, she had informed the defendant of everything necessary for his waiver of counsel, and had allowed him to proceed *pro se*. When the case was ready to go to trial, the court continued, the defendant requested the reappointment of counsel, and the court reappointed counsel, but then, just a week later, the defendant again said that he wanted to proceed *pro se*. "I believe that throughout this case," the court told the defendant, "you were admonished of the requirements regarding representing yourself." The court denied the motion to withdraw guilty plea. The defendant indicated that he wanted to appeal, and the court directed its

8

clerk to file a notice of appeal on his behalf, which the clerk did. The court appointed OSAD to represent him on appeal.

¶ 21                                       ANALYSIS

¶ 22    The defendant appeals from the circuit court's order that denied his motion to withdraw his guilty plea. A trial court's decision to grant or deny a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *People v. Burge*, 2021 IL 125642, ¶ 37. An abuse of discretion will be found only if the trial court's ruling is arbitrary, fanciful, or unreasonable. *Id.*

¶ 23    As previously mentioned, the defendant's attorney on appeal, OSAD, has filed an *Anders* motion to withdraw as counsel. In the brief accompanying that motion, OSAD raises three potential issues, *viz.*: (1) whether the circuit court properly admonished the defendant about his right to counsel, (2) whether the court made the appropriate admonitions and determinations before accepting the defendant's guilty plea, and (3) whether the court properly admonished the defendant under Illinois Supreme Court Rule 604(d) (eff. Sept. 18, 2023). This court agrees with OSAD that each issue is without merit.

¶ 24    In OSAD's first potential issue, the suggestion is that the circuit court was wrong to deny the defendant's motion to withdraw guilty plea because that same court did not properly admonish the defendant concerning his waiver of counsel. Under Illinois Supreme Court Rule 401(a), the circuit court cannot permit a person to waive counsel unless it first informs him and determines that he understands "(1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Only substantial, not literal, compliance with Rule 401(a) is necessary for an

9

effective waiver of counsel. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). Since this issue requires this court to determine whether the circuit court has complied with a supreme court rule, this issue is reviewed *de novo*. *Id.*

¶ 25 On August 14, 2023, when the circuit court held a hearing on the defendant's first motion to proceed *pro se*, the court explicitly informed the defendant of all those matters covered in Rule 401(a). The court's careful questioning of the defendant, and the defendant's answers to those questions, indicated his clear understanding of all those matters, and that he was unequivocally and freely choosing to waive counsel. The court rightly determined that the defendant understood everything necessary for a Rule 401(a) waiver, and that he freely and voluntarily waived his right to counsel. On November 6, 2023, when the court held a hearing on the defendant's second motion to proceed *pro se*, the court did not admonish the defendant as to the first two items enunciated in Rule 401(a), *i.e.*, the nature of the charges and the minimum and maximum sentences prescribed by law. (Presumably, the defendant remembered these points, as he had been admonished on them on August 14, 2023, less than three months earlier; he did not need a full readmonishment on November 6, 2023, to refresh his memory.) Instead, the court admonished and questioned the defendant about matters relating to the knowing and voluntary nature of the waiver of counsel. The defendant's answers indicated a knowing and voluntary waiver, exactly what the court explicitly found. Without doubt, there was substantial compliance with Rule 401(a), and an effective waiver of counsel. See also *People v. Ware*, 407 Ill. App. 3d 315, 347-48 (2011) (the reviewing court looks at the record as a whole, and not solely at the latest admonishments, when determining whether the court substantially complied with Rule 401(a)).

¶ 26 OSAD's second potential issue is whether the circuit court made the appropriate admonitions and determinations before accepting the defendant's guilty plea. Illinois Supreme

Court Rule 402(a) (eff. July 1, 2012) is the rule that states the admonitions and determinations that the court must make before accepting a guilty plea. Under Rule 402(a), the court shall not accept a guilty plea without first informing the defendant and determining that he understands (1) the nature of the charge, (2) the minimum and maximum sentence prescribed by law, (3) that he has the right to plead guilty or to persist in pleading not guilty, and (4) that if he pleads guilty, there will not be a trial of any kind, so that by pleading guilty he waives the right to trial by jury and the right to be confronted with the witnesses against him. Rule 402 requires substantial, not literal, compliance with its provisions. *People v. Burt*, 168 Ill. 2d 49, 64 (1995) (substantial compliance with Rule 402 satisfies due process). Whether the circuit court complied with a supreme court rule is an issue that is reviewed *de novo*. *Campbell*, 224 Ill. 2d at 84.

¶ 27 The defendant's guilty-plea hearing was held on November 29, 2023. As this court's summary of that hearing, *supra*, makes clear, the circuit court thoroughly admonished and questioned the defendant regarding each and every one of the points contained in Rule 402(a) prior to accepting his plea. There is no doubt that the court fully complied with Rule 402(a).

¶ 28 OSAD's third potential issue is whether the circuit court properly admonished the defendant under Rule 604(d). Specifically, OSAD asks whether the court, after the defendant had filed his motion to withdraw guilty plea, complied with this requirement of Rule 604(d): "The trial court shall then [*i.e.*, after the motion's filing] determine whether the defendant is represented by counsel, and if the defendant is indigent and desires counsel, the trial court shall appoint counsel." Ill. S. Ct. R. 604(d) (eff. Sept. 18, 2023). Obviously, the court complied with this requirement. The defendant's motion to withdraw guilty plea was plainly *pro se*; it was hand-written, not typed, and explicitly stated that it was being brought *pro se*. At the hearing held on January 31, 2024, the court asked the defendant whether he wanted to have an attorney appointed to represent him on

11

his motion, and the defendant answered in the negative. A bit later, the defendant stated that he "would not like an attorney." The court clearly complied with Rule 604(d)'s requirement that the court determine whether the defendant has, or wants, counsel.

¶ 29                                            CONCLUSION

¶ 30    The circuit court did not abuse its discretion when it denied the defendant's motion to withdraw his guilty plea. Any argument to the contrary would have no merit. Accordingly, OSAD is granted leave to withdraw as the defendant's attorney on appeal, and the judgment of the circuit court is affirmed.


¶ 31    Motion granted; judgment affirmed.